```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

GLOBAL CROSSING BANDWIDTH, INC.,

                        Plaintiff,            06-CV-6415T
                                              **DECISION**
               v.                             **and ORDER**

PNG TELECOMMUNICATIONS, INC.,

                        Defendant.
_____
```

INTRODUCTION

Plaintiff Global Crossing Bandwidth, Inc., ("Global Crossing") brings this action pursuant to diversity jurisdiction alleging that the defendant PNG Telecommunications, Inc., ("PNG") breached a contract entered into by the parties. Specifically, Global Crossing contends that PNG breached an agreement to purchase certain telecommunications services for three years by discontinuing those services after only one year. Plaintiff further alleges that PNG failed to honor a non-contractual obligation to retain services for three years. Plaintiff seeks damages for the defendant's alleged breach of contract as well as a declaratory judgment against PNG.

Global Crossing moves for summary judgment on all counts of the Amended Complaint claiming that there are no material issues of fact in dispute, and that it is entitled to judgment as a matter of law. PNG opposes plaintiff's motion, and cross-moves for summary judgment on grounds that because there is no provision in the

contract for damages in the case of early termination of the contract, plaintiff is not entitled to such damages.

For the reasons set forth below, I grant plaintiff's motion for summary judgment, and deny defendant's cross-motion for summary judgment.

BACKGROUND

In 1998, plaintiff Global Crossing (by its predecessor in interest) and defendant PNG entered into a Carrier Services Switchless Agreement ("CSSA") under which PNG agreed to purchase various commercial voice communications services from Global Crossing.  The CSSA was amended on several occasions over the years, and in June, 2003, the parties entered into Amendment No. 10 (the "Amendment"). Under this Amendment, PNG undertook to purchase data communications services from Global Crossing, including "wavelength" services.  Wavelength Service is described in Amendment 10 as "a fiber-optic, transponder based point to point circuit between Global Crossing Points of Presence." <u>See</u> Specific Service Terms and Conditions for Global Crossing Wavelength Service, (hereinafter "the Agreement")(attached as Exhibit "S" to Amendment #10 to Carrier Switchless Agreement) at § 1.1.  The Agreement further provides that the service may be purchased in two ways: either as an annual lease of the circuit for a term of years, with a monthly service charge, or a pre-paid lease of the circuit for a term of years.  Agreement at § 1.6.

Pursuant to the Agreement, PNG leased 11 circuits from Global Crossing for a term of three years, with a monthly recurring charge of $121,702. Specifically, the Agreement provided that "Each circuit shall have a specific in-service term commitment of three years which shall be separate and distinct from the term of the Carrier Services Switchless Agreement." Agreement at § 5. The Agreement also provided discounts to PNG during the first year of the three-year term of each circuit. Pursuant to Section 6 of the Agreement, PNG received a 75% discount for each circuit during the first six months of the Agreement, and received a 50% discount during the next sixth months. Thereafter, PNG was to pay the full price for each circuit. Agreement at § 6.

In November, 2004, after PNG had received all of the discounts under the Agreement, PNG terminated its wavelength service. Thereafter, Global Crossing made a demand for payment for the remaining monthly charges due under the agreement. PNG declined to pay for the remaining months, contending that because Amendment 10, (unlike several other Amendments to the CSSA) did not contain an early termination liability clause, PNG was free to terminate the contract without penalty. This lawsuit ensued.

## DISCUSSION

I.   <u>The Parties' Motions for Summary Judgment</u>

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the

discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  When considering a motion for summary judgment, all genuinely disputed facts must be resolved in favor of the party against whom summary judgment is sought.  Scott v. Harris, ___ U.S. ___, ___; 127 S.Ct. 1769, 1776 (2007) .  If, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party, a grant of summary judgment is appropriate.  Scott, ___ U.S. at ___; 127 S.Ct. at 1776 (citing Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-587.

    II.   PNG has Breached Amendment 10 to the CSSA

To state a claim for breach of contract under New York law, a plaintiff must establish: (1) the existence of a valid contract, (2) performance of the contract by the plaintiff; (3) breach of the contract by the defendant; and (4) damages.  First Investors Corp. v. Liberty Mut. Ins. Co., 152 F.3d 162, 168 (2nd Cir. 1998)(citing Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525 (2d Cir.1994).  In the instant case, as set forth below, Global Crossing has established all four elements of its claim for breach of contract.

There is no dispute that Global Crossing and PNG entered into a valid contract: the CSSA.  Further, there is no dispute that the

parties entered into Amendment 10, which required Global Crossing to provide wavelength services to PNG, and required PNG to pay for those services. Accordingly, Global Crossing has established the first element of its case for breach of contract.

Nor is there any dispute that Global Crossing provided wavelength services to PNG as required under the CSSA. Global Crossing alleges that it provided the circuits for PNG's use as set forth in the contract, and PNG does not dispute this allegation. Accordingly, plaintiff has established the second element of its claim for breach of contract: that it performed its duties under the contract.

Global Crossing contends that PNG breached Amendment 10 of the agreement by discontinuing wavelength services prior to the end of the three year commitment period set forth in the contract. PNG contends that because Amendment 10 does not contain a clause specifying liability or any amount of damages in the event of early termination of the agreement by PNG, it is not liable to Global Crossing for any damages as a result of its decision to discontinue wavelength services.

I find that under the plain language of the contract, PNG agreed to purchase wavelength services from Global crossing for a period of three years. As stated above, Agreement provides in relevant part that: "Each circuit shall have a specific in-service term commitment of three years which shall be separate and distinct

from the term of the Carrier Services Switchless Agreement." Agreement at § 5. This language is clear and unambiguous. It provides in no uncertain terms that PNG agreed to lease circuits from Global Crossing for a minimum period of three years, at the prices set forth in the Agreement.

PNG however, contends that it was free to terminate the Agreement at any time because the Agreement contained no clause providing for liability in the case of early termination. In support of this contention, PNG argues that several of the other Amendments to the CSSA contained early termination liability clauses, and because this amendment did not, under rules of contract interpretation, an early termination penalty should not be read into the Amendment. PNG further claims that it specifically negotiated out of the Agreement an early termination liability clause because PNG was not confident that its wavelength business would be successful, and therefore, the company wanted to be able to cancel the services if the business venture did not succeed.[1]

Evidence that PNG negotiated an early termination liability clause out of the Agreement is, however, inadmissible on grounds

---

[1] Despite PNG's claims that it would not enter into any agreement for wavelength services that included an early termination clause, there is no evidence that PNG attempted to include any provision in the contract with Global Crossing expressly reserving PNG's right to cancel wavelength services prior to the expiration of the three-year term. Given PNG's claim that the ability to cancel wavelength services at any time without penalty was imperative, it is not clear why such a provision expressly reserving that right was not included in the contract.

that such evidence constitutes impermissible parol evidence. "The parol evidence rule generally prohibits the admission of extrinsic evidence of prior or contemporaneous oral agreements to explain the meaning of a contract that the parties have reduced to an unambiguous integrated writing." Gualandi v. Adams, 385 F.3d 236, 241 (2nd Cir., 2004). "[T]o apply the parol evidence rule, th[e] [c]ourt must employ a three-step inquiry. . . ." Municipal Capital Appreciation Partners, I, L.P. v. Page, 181 F.Supp.2d 379, 392 (S.D.N.Y., 2002). First, the court must determine whether or not the written contract is an integrated agreement. Id. "A written contract is considered integrated when the parties intend it to constitute the complete and final expression of their agreement." Starter Corp. v. Converse, Inc., 170 F.3d 286, 295 (2nd Cir., 1999). If the contract is an integrated document, the court must then determine whether the language of the written contract is clear or ambiguous. Municipal Capital Appreciation Partners, 181 F.Supp.2d at 392. If the language is clear, the court may not consider the parol evidence, and instead, must apply the clear language of the contract. Id.

The contract in the instant case is an integrated contract. Section 14 of the CSSA, entitled "INTEGRATION" provides that:

> This Agreement and all Exhibits, Schedules and other attachments incorporated herein, represent the entire agreement between the Parties with respect to the subject matter hereof and supersede and merge all prior agreements, promises, understandings,

> statements, representations, warranties, indemnities and inducements to the making of this Agreement relied upon by either Party whether written or oral.

Because Section 14 of the CSSA was not modified by Amendment 10, or any other Amendment to the CSSA, the Integration clause of the CSSA governs Amendment 10. See Amendment 10 at § 7 ("The balance of the Agreement and any executed amendments or addenda thereto not modified by this amendment shall remain in full force and effect.")

Having determined that the contract at issue is an integrated document, I must now determine whether or not the relevant language of the contract is ambiguous. Whether or not contract language is ambiguous is a question of law to be decided by the court. Parks Real Estate Purchasing Group v. St. Paul Fire and Marine, 472 F.3d 33, 42 (2nd Cir., 2006). As stated above, I find that the language of the contract with respect to the duration of the lease of circuits, though brief, is clear and unambiguous. The contract provides in relevant part that: "Each circuit [leased by PNG] shall have a specific in-service term commitment of three years which shall be separate and distinct from the term of the Carrier Services Switchless Agreement." Agreement at § 5. Because this language is clear, the court may not consider extrinsic evidence purporting to demonstrate that the parties intended to preclude damages or payment for the full term of the Agreement in the case of an early termination of the Agreement by PNG. Municipal Capital Appreciation Partners, 181 F.Supp.2d at 392.

PNG argues that even absent consideration of extrinsic evidence, it is clear from the face of the contract that Global Crossing is not entitled to any damages or payment under the contract because unlike several other Amendments to the CSSA, Amendment 10 does not contain an early termination provision. PNG contends that because the parties did not include an early termination provision in Amendment 10, but did include such clauses in other Amendments, the court must infer that the parties did not intend that PNG would be subject to any liability in the case of early termination of wavelength service. In support of this position, PNG relies on the maxim "*inclusio unius est exclusio alterius*", which stands for the proposition that "when certain language is omitted from one provision but placed in other provisions, it is assumed that the omission was intentional." Triple Z Postal Services, Inc. v. United Parcel Service, Inc., 2006 WL 3393259, *6 (N.Y. S.Ct., 2006)(citing Sterling Investor Services, Inc. v. 1155 Nobo Associates, LLC, 30 AD3d 579 (N.Y.A.D. 2nd. Dept., 2006). PNG contends that because language regarding early termination liability is present in several other amendments, but absent from Amendment 10, the absence of such language clearly indicates that PNG would not be liable for any costs or damages in the case of early termination.

I find, however, that a determination that Global crossing may be entitled to damages for a breach of Amendment 10 despite the

absence of an early termination clause is not inconsistent with the maxim of "*inclusio unius est exclusio alterius*."  That the parties chose to specify the measure of damages in some Amendments but not others does not give rise to an inference that the parties intended that there be no damages in the case of a breach, but instead, gives rise to an inference that the parties chose to quantify the measure of damages prior to any breach in some instances, but not in others.  Had the parties desired to agree that no damages would occur in the case of a breach of Amendment 10, the parties were certainly capable of including such language in the Agreement.

Moreover, I find, that adopting PNG's position would do violence to another cannon of contract interpretation: that "contracts should be read to 'give effect and meaning to every provision.'" Southern New England Telephone Co. v. Global Naps, Inc., 2008 WL 534745, *5 (D.Conn., February 25, 2008)(quoting Gottlieb v. Carnival Corp., 436 F.3d 335, 337 (2d Cir.2006)).  "[I]t is a cardinal maxim of contract interpretation that an agreement should not be construed in a manner that renders any provision meaningless . . . ." Baum v. County of Rockland, 337 F.Supp.2d 454 (S.D.N.Y., 2004).  In this case, adopting PNG's argument that it was under no obligation to maintain wavelength services for three years would render meaningless the provision in the contract unambiguously stating that the term commitment for each circuit is three years. As stated above, Section 5 of the

Agreement provides that "Each circuit shall have a specific in-service term commitment of three years which shall be separate and distinct from the term of the Carrier Services Switchless Agreement."  To hold that PNG could cancel any or all circuits prior to the expiration of the three year term would render Section 5 meaningless, and accordingly, I decline to adopt PNG's contention that it was free to cancel wavelength services at any time.  Because the clear language of the Agreement obligated PNG to pay for wavelength services for three years, and because PNG failed to honor that obligation, I find that PNG has breached Amendment 10 of the CSSA.

### III. Damages

Having found that PNG breached Amendment 10 of the CSSA, the only question remaining is whether or not Global Crossing is entitled to damages, and if so, the amount of damages.  Global contends that it is entitled to damages in the amount of the monthly recurring charges that it would have received from PNG for the balance of the contract had PNG not breached the contract: an amount equal to $2,734,360, plus any applicable interest.  I find that this is the appropriate measure of damages. See Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc., 500 F.3d 171, 185 (2nd Cir. 2007)("A party injured by breach of contract is entitled to be placed in the position it would have occupied had the contract been fulfilled according to its terms.")

PNG contends that because Amendment 10 does not provide for any liquidated damages, Global Crossing is not entitled to any damages resulting from PNG's discontinuation of wavelength services. However, "liquidated and actual damages are mutually exclusive remedies under New York law." U.S. Fidelity and Guar. Co. v. Braspetro Oil Services Co., 369 F.3d 34, 71 (2nd Cir., 2004). Accordingly, the fact that plaintiff may not be entitled to liquidated damages does not preclude it from recovering actual damages resulting from PNG's breach of Amendment 10. See also, Wechsler v. Hunt Health Systems, Ltd., 330 F.Supp.2d 383, 425-26 (S.D.N.Y., 2004)(a plaintiff "may not recover early termination damages in addition to damages for breach of contract.") In cases such as this, where the breaching party has terminated services for which it agreed to pay for a period of time, and the contract sets forth the minimum payments due each month, the actual damages suffered by the non-breaching party is an amount equal to the payments it would have received absent the breach. Merrill Lynch & Co. Inc., 500 F.3d at 185. See also LNC Investments, Inc. v. First Fidelity Bank, 1997 WL 528283, *36 (S.D.N.Y., August 27, 1997)(holding that benefit-of-the-bargain damages constitute actual damages where such damages are identifiable and not speculative).

I further find that the damages to which plaintiff is entitled are not limited by any provision of the CSSA. Section 3(h) of the CSSA provides that PNG must maintain a certain minimum usage of

Global Crossing services, and that if PNG falls below the minimum usage, PNG will be liable to Global Crossing for the difference between its actual usage and the minimum usage required under the contract. Amendment 10, however, provides that the provision of wavelength services by Global Crossing to PNG is "separate and distinct" from the term of the CSSA. Agreement at § 5. Accordingly, I find that Section 3(h) of the CSSA does not modify or limit PNG's liability pursuant to Amendment 10.

Section 5(d)(v) of the CSSA provides that in the case of a breach of the CSSA, Global Crossing may "collect from PNG as liquidated damages an amount equal to the Minimum Charge times the number of months remaining on the unexpired term of this Agreement . . . ." In its opening brief, PNG claims that § 5(d)(v) "simply do[es] not (and cannot) logically apply to Amendment 10." See Defendant's Response to Plaintiff's Renewed Motion for Summary Judgment (docket item 44) at p. 12. In its reply brief, however, PNG takes the position that absent an independent provision for liquidated damages, "Section 5(d)(v) of the CSSA, by its plain English terms governs liquidated damages under Amendment 10." See Defendant PNG Telecommunications, Inc.'s Reply Memorandum of Law in Support of Cross Motion for Summary Judgment at p. 4. Despite the clearly inconsistent position taken by PNG on this matter, I find that Section 5(d)(v) does not limit or modify PNG's liability under Amendment 10 because, like Section 3(h) above, Section 5(d)(v)

relates to the minimum monthly charge due under the CSSA. Because the charges for wavelength services set forth in Amendment 10 are expressly separate obligations that do not implicate the minimum monthly charge provision of the CSSA, section 5(d)(v) does not implicate the charges or obligations due pursuant to Amendment 10.

Finally, I find that Section 7(b) of the CSSA does not limit Global Crossing's right to damages under Amendment 10. Section 7(b) of the CSSA provides that "In no event shall either Party be liable to the other Party for incidental and consequential damages, loss of goodwill, anticipated profit, or other claims for indirect damages in any manner related to this Agreement or the Services." CSSA at § 7(b). The damages to which Global Crossing is entitled as a result of PNG's breach of Amendment 10 are not incidental, consequential, or indirect damages, and are not damages for loss of goodwill or anticipated profit. Rather, the damages are direct damages resulting from PNG's failure to honor its obligation to pay for wavelength services for three years. I therefore find that Global Crossing is entitled to the amount it would have received under the contract had PNG not breached the contract and is entitled to Judgment therefore in the amount of $2,734,360.00 plus applicable interest.

## CONCLUSION

For the reasons set forth above, plaintiff's motion for summary judgment on the issue of breach of contract is granted, and

defendant PNG is found to be in breach of Amendment 10 to the CSSA. Plaintiff is entitled to Judgment in its favor in the amount of $2,734,360.00 plus applicable interest.  Defendant PNG's cross-motion for summary judgment is denied, and Plaintiff's motion to strike is denied as moot.

      ALL OF THE ABOVE IS SO ORDERED.

                                            S/ Michael A. Telesca
                                      _____
                                            MICHAEL A. TELESCA
                                    United States District Judge

Dated:    Rochester, New York
           May 15, 2008